

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed October 21, 2016**

**United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re:<br><br>2747 CAMELBACK, LLC,<br><br>    Debtor. | §<br>§<br>§<br>§<br>§<br>§ | CASE NO. 16-31846-hdh-11<br><br>(Chapter 11) |
| 2747 CAMELBACK, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>SINGLE-FAMILY RESIDENTIAL<br>NEIGHBORHOOD PRESERVATION, INC.<br>d/b/a/ CAMELBACK 24TH STREET SINGLE<br>FAMILY COALITION; *ET. AL.*,<br><br>    Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Adversary Proceeding No. 16-03065-hdh |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**
**IN SUPPORT OF FINAL JUDGMENT**

    CAME ON FOR HEARING on the 14th day of October, 2016, the *Debtor's Motion for Final Default Judgment and Brief In Support Thereof* (the "Motion"). Based on the Court taking

judicial notice of all documents filed in the Bankruptcy Case and this Adversary Proceeding, based on all declarations and affidavits on file in this Adversary Proceeding, based on all certificates of service and proof of service on file in this Adversary Proceeding, based on the Clerk's entries of default entered in this Adversary Proceeding, based on the factual allegations as pled by the Debtor in its Complaint being admitted as true upon default, and based on the Court's independent review of governing law, the Court hereby enters the following Findings of Fact and Conclusions of Law in support of its *Order Granting Debtor's Motion for Default Judgment and Ordering Protection Under Servicemembers Civil Relief Act* and its *Final Judgment Quieting Title and Permanent Injunction* entered in this Adversary Proceeding.

Where appropriate, a Finding of Fact shall be deemed a Conclusion of Law, and a Conclusion of Law shall be deemed a Finding of Fact.

## I.     FINDINGS OF FACT

1.     2747 Camelback, LLC (the "Debtor") is a Delaware Limited Liability Company, with its principal place of business in the City of Dallas, Dallas County, Texas.

2.     The Debtor owns certain real property and the improvements thereon located in the City of Phoenix, Maricopa County, Arizona, generally described as 2747 E. Camelback Rd., 2725 E. Camelback Rd., and 2735 E. Camelback Rd., Phoenix, Arizona 85016 (the "Property").

3.     On May 4, 2016 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code with this Court, thereby initiating Bankruptcy Case No. 16-31846-hdh-11 (the "Bankruptcy Case").

4.     The filing of the Bankruptcy Case created the Debtor's bankruptcy estate (the "Estate"), and all rights and interests of the Debtor in the Property and under the DCA (as defined herein) became property of the Estate.

5. The Debtor remains a debtor-in-possession in the Bankruptcy Case and manages the Estate. No trustee or examiner has been appointed in the Bankruptcy Case.

6. The Debtor purchased the Property in approximately March, 2007.

7. In October, 2006, the prior owner of the Property, 2725 Office Investors, LLC, entered into that certain *Development Cooperation Agreement* (the "DCA") with eight individuals referred to in the DCA as the "Party of the Second Part."

8. When the Debtor purchased the Property, the Debtor had no knowledge or notice of the existence of the DCA.

9. Prior to the Debtor purchasing the Property, the Debtor retained a title insurance company which, among other things, ran a title review of the Property which did not disclose the existence of the DCA.

10. The senior lender lending funds to the Debtor secured by the Property was NexBank, SSB, which retains a lien, as agent, against the Property. No disclosure of the existence of the DCA was made to NexBank, and none of its title reviews revealed the existence of the DCA.

11. The DCA was first recorded with Maricopa County on November 4, 2011, at document number 20110917859, by one or more unknown individuals. Since the Debtor purchased the Property prior to this date, and since NexBank, SSB, recorded its deed of trust against the Property prior to this date, the recording of the DCA did not constitute any constructive notice or other notice of the DCA to the Debtor or to NexBank, SSB.

12. The DCA states that, in exchange for the support of the Party of the Second Part (citizens who were active in local neighborhood interests and causes) in assisting the prior owner of the Property in obtaining approval of a rezoning application, the prior owner would

voluntarily agree to certain deed restrictions being recorded against the Property, which would restrict what could be built on the Property. The substance of those deed restrictions is detailed in the DCA itself; thus, the DCA can be construed as restricting what can be built on the Property by reference to future, contemplated deed restrictions.

13. The DCA specifically states that said deed restrictions would be recorded against the Property only upon the approval of said rezoning application. Therefore, the DCA contemplates that any restrictions upon the Property would be effectuated and recorded in the future, upon the satisfaction of a condition precedent. Said rezoning application was either never sought or never obtained. Said deed restrictions were never recorded.

14. The DCA further provides that said deed restrictions would benefit property owners and their successors in interest within the six hundred (600) feet of the existing south perimeter property boundary line of the Property, and also the Camelback 24th Street Single Family Coalition.

15. When the DCA was recorded, it had the effect of preventing the Debtor from obtaining financing, investments, or partners to develop the Property in a way other than as prescribed by the DCA. The Debtor was unable to obtain title insurance without the DCA being excepted from title insurance. This is because, although the deed restrictions were never recorded, as explained above, the discussion of the substance of the deed restrictions in the DCA itself led others to be concerned that the DCA itself may effectuate the deed restrictions, which was likely the intent of the person or persons who caused the DCA to be recorded.

16. The Debtor learned of the existence of the DCA in September, 2015, as it was preparing plans to develop the Property.

17. At present, the Property consists of three small buildings, that have been boarded up and welded shut due to squatting, and the Property cannot be meaningfully developed with the DCA recorded against the Property.

18. Thus, the DCA constitutes a cloud on the Debtor's title to the Property and the Debtor's enjoyment of the Property, and an encumbrance against any person's development of the Property. With respect to the Bankruptcy Case, the DCA constitutes a material economic encumbrance preventing creditors in the Bankruptcy Case from being paid because the Debtor is unable to monetize its property for fair market value.

19. On May 4, 2016, the Debtor filed its *Debtor's Original Complaint to Quiet Title, for Declaratory Relief, and for Injunctive Relief*, thereby initiating this Adversary Proceeding.

20. On May 9, 2016, the Debtor filed its *Debtor's Amended Complaint to Quiet Title, for Declaratory Relief, and for Injunctive Relief* (the "Complaint").

21. By the Complaint, the Debtor generally seeks a quiet title judgment regarding the DCA. The Complaint seeks declarations that the DCA does not constitute a covenant running with the land, declarations that the DCA is invalid or unenforceable against the Debtor, the Estate, or the Property, a finding that the DCA is avoidable under Arizona law and the Bankruptcy Code, and other relief against the person or persons who recorded the DCA. The fraudulent transfer avoidance of the DCA is moot and has been orally withdrawn by Debtor as a result of the Court granting judgment on the declaratory judgment claims.

22. The Complaint named all the individuals defined as the Party of the Second Part in the DCA.

23. The Complaint further named all known owners of real property within the 600 foot range referenced in the DCA, including whether the 600 foot range was anywhere from the

south perimeter property boundary line of the Property, or anywhere within a 600 foot radius of the Property. The Debtor fully and appropriately obtained such ownership information by hiring a title insurer and real property records company to review and pull actual title records regarding said 600 foot range(s).

## II. CONCLUSIONS OF LAW

**A.** **JURISDICTION AND VENUE**

24. The Court has jurisdiction over this Adversary Proceeding and the Motion under 28 U.S.C. § 1334.

25. This Adversary Proceeding and the Motion are core proceedings within the meaning of 28 U.S.C. § 157(b)(2). Among other things, this Adversary Proceeding adjudicates the extent of various alleged interests in the Property, which is in the *custodia legis* of this Court, and the extent of potential claims *in rem* against the Property or against the Debtor under the DCA. *See Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440, 448 (2004).

26. Thus, the issues concern the Court's exclusive jurisdiction under 28 U.S.C. § 1334(e) to adjudicate the extent of interests in property of the Estate, which exclusive jurisdiction is by definition core, and the issues are core under 28 U.S.C. § 157(b)(2)(B), (H), (K), and (O).

27. Venue of the Adversary Proceeding before this Court is proper pursuant to 28 U.S.C. § 1409 because the Bankruptcy Case is pending before this Court, and the venue of the Bankruptcy Case before this Court is itself property under 28 U.S.C. § 1408(1) as the District where the Debtor maintains its principal place of business.

B.     **THE DEFENDANTS AND SERVICE OF PROCESS**

28.    In order for the Court to grant *in rem* relief as against the world with respect to the DCA, it is necessary under fundamental principles of due process to ensure that, first, the Debtor has named in this Adversary Proceeding as a defendant any person or entity with a potential interest in the DCA.

29.    To this end, the Complaint names three groups of defendants.  First, it names as the "DCA Defendants" those persons who are the actual counterparties to the DCA; *i.e.* the "Party of the Second Part."  Second, the Complaint names as the "Property Owner Defendants" those persons or entities owning any real property within the 600 foot range provided for in the DCA.  The Debtor has correctly and accurately named all such defendants, where the fee ownership of said 600 foot properties is known.  Third, the Complaint names as "Doe Defendants" those persons and entities who may have undisclosed or unknown interests in the DCA or in real property within the 600 foot range of the DCA, or who would otherwise be unknown to the Debtor from a review of the real property records.

30.    With respect to the DCA Defendants and the Property Owner Defendants, the Debtor timely and appropriately served summons (together with the Complaint and all related required documents) on said defendants, in compliance with all applicable rules and laws, at the appropriate addresses and through the appropriate means as prescribed by the Federal Rules of Bankruptcy Procedure.

31.    With respect to the Doe Defendants, this Court entered an order authorizing the Debtor to employ publication notice in compliance with federal and Arizona law.  The Debtor complied with said publication requirements, including by providing for notice in appropriate newspapers for the appropriate periods, as required by this Court's order.  Those publication

requirements were designed to, and did, provide sufficient, accurate, adequate and timely notice to any Doe Defendant of the pendency of the Complaint and of this Adversary Proceeding, of the relief sought, and of the need to appear and answer to protect any interest that any Doe Defendant had in the DCA.

32. None of the Doe Defendants timely appeared or answered the Complaint. Thus, the term "Defaulting Defendants," as defined below, includes any Doe Defendant with an interest in the DCA not otherwise a named DCA Defendant or a named Property Owner Defendant, and any Doe Defendant with an interest in real property within the 600 foot range of the DCA not otherwise a named Property Owner Defendant.

33. Accordingly, in addition to *in rem* jurisdiction and subject matter jurisdiction, the Court has personal jurisdiction, to the extent necessary, over all persons or entities that may hold an interest in the DCA.

34. However, the relief the Court is granting is *in rem* and the Court's judgment is not "against" any defendant. Rather, the naming of the defendants and the discussions below regarding settling and defaulting defendants is: (i) to ensure that all persons and entities with a potential interest in the DCA are included in this Adversary Proceeding, in order that the Court may grant the Debtor full and final relief as against the world; and (ii) to ensure that anyone with such an interest has had the ability to appear and answer the Complaint and, either has entered into a settlement, thereby consenting to a quiet title judgment, or has defaulted.

C. **SETTLING DEFENDANTS**

35. In the Bankruptcy Case, the Court entered two orders authorizing the Debtor, under Bankruptcy Rule 9019, to enter into settlements with the DCA Defendants and the Property Owner Defendants. By these settlements, the DCA Defendants disclaimed any interest

under the DCA and terminated the DCA. Similarly, by these settlements, certain of the Property Owner Defendants disclaimed any interest in the DCA.

36. To evidence said settlements, each settlement required the defendant to execute and to deliver to the Debtor a recordable quitclaim deed that the Debtor could record against the Property, evidencing the disclaiming of interests under the DCA and/or the termination of the DCA by the respective settling defendant.

37. Ultimately, in compliance with said orders, pursuant to notices filed in the Adversary Proceeding, pursuant to settlement agreements and quitclaim deeds attached to said notices, pursuant to orders of dismissal entered in the Adversary Proceeding, and pursuant to said quitclaim deeds actually recorded by the Debtor, all of the DCA Defendants, a number of the Property Owner Defendants, and some Doe Defendants disclaimed any interest under the DCA and were dismissed with prejudice from this Adversary Proceeding.

38. The list of said dismissed DCA Defendants, Property Owner Defendants, and Doe Defendants (collectively, the "Settling Defendants"), together with the dates of dismissal and the recording number for their respective quitclaim deeds, as recorded by the Debtor in Maricopa County, is as follows:

| No. | Settling Defendants | Dismissal Order Entered | Recording Number |
|---|---|---|---|
| 1 | Adams, Alison | 6/30/2016 | 2016-0738696 |
| 2 | Arciniega, Aaron | 9/29/2016 | 2016-0735602 |
| 3 | AT 2701 Phoenix, LLC | 8/24/2016 | 2016-0738700 |
| 4 | Barber, Craig | 6/30/2016 | 2016-0739475 |
| 5 | Barber, Rhonda | 6/30/2016 | 2016-0739476 |
| 6 | Barnes, Paul | 8/4/2016 | 2016-0739477 |
| 7 | Bies, Timothy | 8/10/2016 | 2016-0733907 |
| 8 | Chan, Annie | 7/26/2016 | 2016-0733599 |
| 9 | Ciminello (Novotny), Lauren | 7/6/2016 | 2016-0739095 |
| 10 | Cosovich, Maureen | 7/6/2016 | 2016-0739089 |
| 11 | Cosovich, Peter | 7/6/2016 | 2016-0740943 |

| 12 | Coury, Daniel | 7/26/2016 | 2016-0733903 |
|---|---|---|---|
| 13 | CRG Camelback 800, LLC | 9/8/2016 | 2016-0738699 |
| 14 | Cuddihy, Sally[1] | 7/21/2016 | 2016-0735603 |
| 15 | DeLaNoy, Deanna | 7/6/2016 | 2016-0737640 |
| 16 | DeLaNoy, Lawrence | 7/6/2016 | 2016-0737641 |
| 17 | Drake, Peter | 8/4/2016 | 2016-0736781 |
| 18 | Ference, Michael | 8/10/2016 | 2016-0739090 |
| 19 | Ference, Theresa | 8/10/2016 | 2016-0733905 |
| 20 | File, Richard | 7/26/2016 | 2016-0733906 |
| 21 | Fine, Jeff | 8/4/2016 | 2016-0736776 |
| 22 | Frankel, Ty | 7/11/2016 | 2016-0737027 |
| 23 | G&I VII CB Road, LLC | 10/11/2016 | 2016-0739087 |
| 24 | Gregory, Alan | 7/26/2016 | 2016-0733595 |
| 25 | Gregory, Tammera Cord | 7/26/2016 | 2016-0733596 |
| 26 | Hahnenkratt, Michael | 7/6/2016 | 2016-0738368 |
| 27 | Hans J. Thiele & Gail A. Thiele Trust | 7/21/2016 | 2016-0733600 |
| 28 | Hart Camelback, LLC | 6/30/2016 | 2016-0738695 |
| 29 | Hawkins, Jasper | 8/4/2016 | 2016-0736780 |
| 30 | Heeter, Eric | 7/6/2016 | 2016-0738370 |
| 31 | Hintze Investment Company, LLC | 7/11/2016 | 2016-0733904 |
| 32 | Hintze, Brian | 6/30/2016 | 2016-0739473 |
| 33 | Hintze, Gregory | 8/4/2016 | 2016-0736779 |
| 34 | Hintze, Michael D. | 6/30/2016 | 2016-0738697 |
| 35 | Hintze, Pamela | 6/30/2016 | 2016-0739474 |
| 36 | Hintze, Patricia | 6/30/2016 | 2016-0738702 |
| 37 | Hintze, Patrick | 7/21/2016 | 2016-0733601 |
| 38 | Jay Charles Living Trust | 6/30/2016 | 2016-0738698 |
| 39 | Johnson, David | 7/6/2016 | 2016-0738366 |
| 40 | Jolly, Elizabeth | 9/29/2016 | 2016-0728082 |
| 41 | Jolly, Lawrence | 7/6/2016 | 2016-0735629 |
| 42 | Knoll, Matt | 7/6/2016 | 2016-0737638 |
| 43 | Knoll, Rebekah | 7/6/2016 | 2016-0737639 |
| 44 | Lawson, April | 7/6/2016 | 2016-0740945 |
| 45 | Lawson, Randy | 7/6/2016 | 2016-0740944 |
| 46 | Litton, Heather | 8/4/2016 | 2016-0736777 |
| 47 | Meighan, Kim | 7/6/2016 | 2016-0738367 |
| 48 | Miceli, Josephine | 7/21/2016 | 2016-0739092 |
| 49 | Moody, Julia | 7/6/2016 | 2016-0738371 |
| 50 | Novotny, Ross | 7/6/2016 | 2016-0739096 |

---

[1] The Complaint named the "Sarah Cuddihy & Donald F. Cuddihy Family Trust" as a defendant, but it was later determined that the proper defendant should have been Sally Cuddihy. For this reason, the Debtor executed a settlement agreement with Sally Cuddihy and no longer seeks any relief against the Sarah Cuddihy & Donald F. Cuddihy Family Trust.

| 51 | O'Toole, Linda | 8/24/2016 | 2016-0738703 |
|---|---|---|---|
| 52 | O'Toole, Shannon | 8/24/2016 | 2016-0738701 |
| 53 | Parechanian, Casey | 6/30/2016 | 2016-0738694 |
| 54 | Paul M. Strohfus Living Trust | 7/21/2016 | 2016-0737028 |
| 55 | Perkins, Helena | 7/11/2016 | 2016-0735642 |
| 56 | Petersen, Patricia | 8/10/2016 | 2016-0733597 |
| 57 | Petersen, Shelby | 7/11/2016 | 2016-0737637 |
| 58 | Quinn Family Revocable Living Trust / Melinda Quinn | 8/24/2016 | 2016-0735604 |
| 59 | Randazzo, Chris and Cheryl | 7/21/2016 | 2016-0737029 |
| 60 | Rilling, Victor | 9/29/2016 | 2016-0735605 |
| 61 | The Roessler Family Trust / Luanne Roessler | 6/30/2016 | 2016-0739094 |
| 62 | Sevilla, Mary | 7/6/2016 | 2016-0737642 |
| 63 | Simon, Jeannette | 7/6/2016 | 2016-0739098 |
| 64 | Simon, Kenneth | 7/6/2016 | 2016-0739097 |
| 65 | Spirit Master Funding VI, LLC | 7/11/2016 | 2016-0736774 |
| 66 | Standage Family Trust | 7/6/2016 | 2016-0738369 |
| 67 | Stum Consulting, LLC | 9/29/2016 | 2016-0735606 |
| 68 | Tauber, Alexander | 8/4/2016 | 2016-0736775 |
| 69 | Tierney, David | 8/4/2016 | 2016-0736778 |
| 70 | Tutrone, Joseph | 7/26/2016 | 2016-0733598 |
| 71 | Vincent Living Trust | 7/11/2016 | 2016-0735643 |
| 72 | Watt, Brian | 7/21/2016 | 2016-0739093 |
| 73 | Watt, Susana | 7/11/2016 | 2016-0735644 |
| 74 | Weisheim, Giselle | 9/29/2016 | 2016-0735607 |
| 75 | Wessel, Denise | 7/6/2016 | 2016-0739088 |
| 76 | Wessel, Donald | 7/6/2016 | 2016-0739091 |

**D.    DEFAULTING DEFENDANTS**

39.    After taking into account the dismissal of the Settling Defendants, what remains are Property Owner Defendants and potentially Doe Defendants who have failed to file any answer or appearance in this Adversary Proceeding.

40.    Each of the following defendants (collectively, the "Defaulting Defendants"), has been timely and validly served with process in this Adversary Proceeding in full compliance with

all applicable laws and rules, and has failed to timely or otherwise file any answer or appearance in this Adversary Proceeding:[2]

| No. | Defaulting Property Owner Defendant | Date of Service of Process | Date of Clerk's Entry of Default |
|---|---|---|---|
| 1 | Camelback 24th Street Single Family Coalition | 5/16/2016 | 9/12/2016 |
| 2 | Jesse Miller | 5/16/2016 | 7/25/2016 |
| 3 | Nicholas Kredit | 5/16/2016 | 7/25/2016 |
| 4 | Chuck Jonkosky | 5/16/2016 | 7/25/2016 |
| 5 | Kristel Jonkosky | 5/16/2016 | 7/25/2016 |
| 6 | Bruce Eide | 5/16/2016 | 7/25/2016 |
| 7 | John Armstrong | 5/16/2016 | 7/25/2016 |
| 8 | Joan Prior | 5/16/2016 | 7/25/2016 |
| 9 | Kim Tay | 5/16/2016 | 7/25/2016 |
| 10 | The Kim Meng Tay Trust | 5/16/2016 | 7/19/2016 |
| 11 | Jarrett Klein | 5/16/2016 | 7/25/2016 |
| 12 | Jareett Lawrence Klein Revocable Living Trust | 5/16/2016 | 7/19/2016 |
| 13 | David Renner | 5/16/2016 | 7/25/2016 |
| 14 | Robert Baker | 5/16/2016 | 7/25/2016 |
| 15 | Marian Baker | 5/16/2016 | 7/25/2016 |
| 16 | Kathleen Barry | 5/16/2016 | 7/25/2016 |
| 17 | Sailajah Janarthanan | 5/16/2016 | 7/25/2016 |
| 18 | Angel Feliciano II | 5/16/2016 | 7/25/2016 |
| 19 | Kyle Radeline | 5/16/2016 | 7/25/2016 |
| 20 | Tyler Stamback | 5/16/2016 | 8/5/2016 |
| 21 | Richard Hunt | 5/16/2016 | 7/25/2016 |
| 22 | Patrick Hayes | 5/16/2016 | 7/25/2016 |
| 23 | Artfullhouse, LLC | 5/16/2016 | 7/19/2016 |
| 24 | James Jenkins | 5/16/2016 | 7/25/2016 |
| 25 | S. L. Capital & Development LLC | 5/16/2016 | 7/19/2016 |
| 26 | Charles Heiner | 5/16/2016 | 7/25/2016 |
| 27 | Tracy Heiner | 5/16/2016 | 7/25/2016 |
| 28 | Calvin R. Pastors & Dorothy J. Pastors Trust | 5/16/2016 | 7/19/2016 |
| 29 | Mark Jacobson | 5/16/2016 | 8/5/2016 |
| 30 | Desert Sun Holdings Land Trust | 5/16/2016 | 7/19/2016 |
| 31 | Brigitte Serrano | 5/17/2016 | 7/25/2016 |
| 32 | The Josephine Miceli Revocable Trust | 5/17/2016 | 7/19/2016 |

---

[2] The list differs from the list in the Motion due to settlements and dismissals entered after the Motion was filed and due to technical corrections (*e.g.* Sarah Cuddihy is also Sally Cuddihy and was dismissed as such).

FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF FINAL JUDGMENT—Page 12

| 33 | Edward Nusbaum | 5/17/2016 | 7/25/2016 |
| --- | --- | --- | --- |
| 34 | Thomas Dreas | 5/17/2016 | 7/25/2016 |
| 35 | Laura Dreas | 5/17/2016 | 7/25/2016 |
| 36 | Michael Treiman | 5/17/2016 | 7/25/2016 |
| 37 | Thomas Dalkin | 5/17/2016 | 7/25/2016 |
| 38 | Shelly Gray | 5/17/2016 | 7/25/2016 |
| 39 | Debra Bies | 5/17/2016 | 7/25/2016 |
| 40 | 2608 East Highland Avenue, LLC | 5/17/2016 | 7/19/2016 |
| 41 | Solomon Rachmin | 5/17/2016 | 7/25/2016 |
| 42 | Miguel Guerrero | 5/17/2016 | 7/25/2016 |
| 43 | Hassan Mukaled | 5/17/2016 | 8/5/2016 |
| 44 | Rana Mukaled | 5/17/2016 | 8/5/2016 |
| 45 | Burch Swift | 5/17/2016 | 7/25/2016 |
| 46 | Raenita Taylor | 5/17/2016 | 7/25/2016 |
| 47 | Karl Eberhardt | 5/17/2016 | 7/25/2016 |
| 48 | Stacey Lewis | 5/17/2016 | 7/25/2016 |
| 49 | Richard Lewis | 5/17/2016 | 7/25/2016 |
| 50 | S R P A I & P D | 5/17/2016 | 7/19/2016 |
| 51 | George Daniolos | 5/17/2016 | 8/5/2016 |
| 52 | Western Alliance Bank, d/b/a Alliance Bank of Arizona | 5/17/2016 | 7/19/2016 |
| 53 | Ragland Family, LLP | 5/17/2016 | 7/19/2016 |
| 54 | CBA-RE Holdings, LLC | 5/17/2016 | 7/19/2016 |
| 55 | 4253 Scottsdale LLC | 5/17/2016 | 7/19/2016 |
| 56 | Capitis Camelback LLC | 5/17/2016 | 7/19/2016 |
| 57 | James Wentworth | 5/17/2016 | 7/25/2016 |
| 58 | Julie Wentworth | 5/17/2016 | 7/25/2016 |
| 59 | Camelback Corporate Office LLC | 5/17/2016 | 7/19/2016 |

41. Each of the Defaulting Defendants has admitted the Debtor's factual allegations as pled in the Debtor's Complaint. *See, e.g.*, *Jackson v. FIE Corp.*, 302 F.3d 515, 524 (5th Cir. 2002). That does not include, however, any legal conclusions stemming from those admissions, which legal conclusions the Court has independently reviewed.

42. The nature of the Complaint does not give rise to any jury rights. *See, e.g.*, *Langbord v. U.S. Dep't of Treasury*, 798 F. Supp. 2d 607, 611 (E.D. Pa. 2011), *rev'd on other grounds*, 783 F.3d 441 (3d Cir. 2015). *See also Humble Oil & Ref. Co. v. Sun Oil Co.*, 191 F.2d 705, 718 (5th Cir. 1951).

E.    SERVICEMEMBERS CIVIL RELIEF ACT

43. Separately, the Servicemembers Civil Relief Act (the "Act"), 50 U.S.C. § 3931, *et. seq.*, applies to this Adversary Proceeding. In that respect, several of the Defaulting Defendants are artificial entities and are obviously not in military service. With respect to other Defaulting Defendants, affidavits on file demonstrate that the Debtor was able to ascertain that a number of them are not in military service. However, those affidavits reveal that the Debtor was unable to determine whether any of the following Defaulting Defendants are in military service (the "Unknown Status Defaulting Defendants"):

1. Richard Hunt
2. Patrick Hayes
3. Robert Baker
4. Jesse Miller
5. John Armstrong
6. Jarrett Klein
7. Marian Baker
8. James Jenkins
9. Mark Jacobson
10. Shelly Gray
11. Miguel Guerrero
12. Raenita Taylor
13. Stacey Lewis
14. Richard Lewis
15. Joan Prior

44. Where the Court is unable to determine whether a defaulting defendant is in military service, the Act provides that the Court may enter such orders or judgments "as the court determines necessary to protect the rights of the defendants under this chapter." One option is that the Court require a bond to protect any of the Unknown Status Defaulting Defendants.

45. Here, the Court is satisfied that a bond or escrow funds of $10,000.00 per each Unknown Status Defaulting Defendant is appropriate, for a total of $150,000.00. The Debtor shall deposit $150,000.00 into the trust funds account of Munsch Hardt Kopf & Harr, P.C., who shall hold the funds for two (2) years after the entry of the final judgment in this Adversary Proceeding. At that time, any funds remaining and not released to any Unknown Status Defaulting Defendant shall be released. Prior to that time, any Unknown Status Defaulting Defendant may make a claim against said funds in such amounts and by such procedure as may

otherwise be appropriate, and nothing in the Court's final judgment prejudices any rights, claims, arguments, defenses, or issues regarding the same.

46. Accordingly, with the aforementioned protections to any Unknown Status Defaulting Defendants who may be in military service, the Court shall enter judgment by default against the same.

### F. APPLICATION OF LAW

47. As the Property is located in Arizona, Arizona law governs. The Debtor seeks to quiet its title regarding the Property. Arizona law provides for an action to quiet title under both the common law and statute. *See* A.R.S. §§ 12-1101, *et seq.* The Debtor has complied with all requirements of the Arizona quiet title statute, including by filing this Adversary Proceeding against any person who may have or claim an interest in the Property adverse to the Debtor.

48. Under Arizona common law, to create a covenant at law running with the land, four prerequisites must be met:

(1) There must be a writing which satisfies the statute of frauds;
(2) The parties must intend that the covenant run with the land;
(3) The covenant must touch and concern the land; and
(4) Privity of estate must exist between the original grantor and the grantee at the time the covenant is made.

*Nickerson v. Green Valley Recreation, Inc.*, 265 P.3d 1108, 1114 (Ariz. Ct. App. 2011) (*quoting Choisser v. Eyman*, 529 P.2d 741, 743 (Ariz. Ct. App. 1974))

49. First, the prior owner and the DCA Defendants did not intend for the DCA to run with the land. Such intent is governed by the face of the document. *R & R Realty Co. v. Weinstein*, 422 P.2d 148, 157 (Ariz. Ct. App. 1966) (holding that language binding restriction to those who obtain title by any means "indicate the intent to create covenants running with the

land"). The DCA makes no statement regarding its binding nature on anyone who obtains title from the prior owner, or that the DCA "shall be binding upon and inure to the benefit of the heirs, executors, administrators, successors and assigns of the parties hereto." *Id.* The DCA likewise does not refer to itself as a covenant running with the land. Finally, the DCA taken as a whole contemplated the recording of some future document that would be a covenant running with the land. Specifically, § 5(c) relating to the deed restriction states that "[prior owner] shall record a written instrument setting forth 'Deed Restrictions' that reflect the rezoning stipulations, the development standards and design standards set forth herein. The Deed Restrictions benefit the property owners and their successors in interest . . . The Deed Restrictions shall expire thirty (30) years after the date of recordation thereof . . . ." If the DCA was intended to be a covenant running with the land, it would have stated so on its face rather than explicitly evidencing an intent to create such a covenant in the future and only upon the occurrence of certain conditions.

50. Second, the DCA does not "touch and concern" the land. "To meet that element, property must receive a benefit that makes it more useful or valuable to the benefited party." *Nickerson v. Green Valley Recreation, Inc.*, 265 P.3d 1108, 1115 (Ariz. Ct. App. 2011). The DCA confers no benefit on any property; rather, it provides that only if the Property is successfully rezoned, a deed restriction would be prepared, executed, and recorded that would benefit such properties within 600 feet of the Property's southern boundary. In order to benefit these properties, the DCA itself would need to contain the restrictions. The only obligations the DCA imposes is that the prior owner would file a rezoning application, which is a personal obligation. *See Federoff v. Pioneer Title & Trust Co. of Arizona*, 803 P.2d 104, 109 n.1 (Ariz. 1990) (noting that personal covenant does not bind heirs and assigns).

51. Third, the necessary privity of estate between the original grantor and the grantee at the time the covenant was made is lacking. Section E of the DCA itself concedes that, "[t]he individuals who comprise the [DCA Defendants] are active in their individual capacity and not in any capacity representing any other person or entity who has an interest in what is developed on the Property." The DCA Defendants did not own any interest in the Property, and there was no transfer of the Property that the DCA was a part of, such as is required for a covenant to run with the land. The DCA was not made on behalf of or for the benefit of the Defaulting Defendants, so there can be no privity between the Defaulting Defendants and the prior owner (and therefore no privity with the Debtor).

52. Thus, the DCA is not a covenant running with the land under Arizona law. As such, it is not enforceable against the Debtor, the Estate, or the Property, but rather, at most, against the prior owner of the Property as a personal obligation.

53. Separate and apart from this conclusion, any restrictions in the DCA fail according to the provisions of the DCA because the contemplated and necessary condition precedent in the DCA never occurred. Specifically, the DCA expressly contemplates a re-zoning, which did not occur. Support for the rezoning is a stated consideration for the DCA. The absence of the occurrence of a condition precedent means that the prior owner's duties to perform (including regarding the deed restrictions in the DCA) never arose. *Langley Farm Investments, L.L.C. v. Petrified Forest Ranch, L.L.C.*, 2007 WL 5439747, at *4 (Ariz. Ct. App. Dec. 13, 2007). Because the prior owner never had a duty to perform, the Debtor can never have such a duty.

**G.**     **FINAL *IN REM* RELIEF**

54. The Complaint seeks relief *in rem* as well as against any of the Defaulting Defendants. This Court has *in rem* jurisdiction over the Property. *See* 28 U.S.C. § 1334(e)(1). *See also In re Simon*, 153 F.3d 991, 996 (9th Cir. 1998). Accordingly, the Court may enter the requested final default judgment against the Property *in rem*. The same applies to any Doe Defendants: "[a] bankruptcy court's *in rem* jurisdiction permits it to determine all claims that anyone, whether named in the action or not, has to the property or thing in question. The proceeding is 'one against the world.'" *Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440, 448 (2004).

55. Because the Debtor is entitled to a quiet title judgment holding that the DCA is not binding on the Debtor, the Estate, or the Property, and because of the circumstances by which the DCA was recorded years after the fact and years during which it was kept secret, the Debtor is entitled to a final injunction prohibiting any person or entity from asserting against the Debtor, the Estate, or the Property any right or claim based on the DCA. Of course, if that right or claim exists independent of the DCA, such as through a zoning ordinance, then the Court's injunction would not apply.

### III. CONCLUSION

56. All prerequisites for final judgment and default judgment against the Defaulting Defendants having been satisfied, the Motion is granted.

57. The Debtor is entitled to, and shall have, judgment in its favor on Count 1 of the Complaint.

58. The Debtor is entitled to, and shall have, judgment in its favor on Count 2 of the Complaint.

59. The Debtor is entitled to, and shall have, judgment in its favor on Count 3 of the Complaint.

60. The Debtor is entitled to, and shall have, judgment in its favor on Count 4 of the Complaint.

61. The Debtor is entitled to, and shall have, judgment in its favor on Count 5 of the Complaint.

62. The Debtor has withdrawn, without prejudice, Count 6 and Count 7 of the Complaint.

63. Count 8 and Count 9 of the Complaint are dismissed as moot, in light of the relief otherwise granted on Counts 1 through 5.

64. There being no other claims or causes of action, and all parties and claims having been disposed of, final judgment shall issue by separate document.

# # # END OF DOCUMENT # # #